Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6496 | DATE | 10/24/2000 |
| CASE TITLE | Edward F. Altman vs. City of Chicago | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The defendant City of Chicago's motion to dismiss [13-1] is hereby granted in part and denied in part. The class action allegations contained in the first amended complaint are dismissed. The motion is denied in all other respects.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | OCT 25 2000 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 OCT 25 PM 3: 44 | OCT 26 2000 |
| | Copy to judge/magistrate judge. | | date mailed notice |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD F. ALTMAN, Individually and on behalf of a Class of Employees of the Chicago Fire Department, ) ) ) ) Plaintiff, ) ) v. ) ) CITY OF CHICAGO, a municipal Corporation, ) ) ) Defendant. ) | No. 99 C 6496 Judge Wayne R. Andersen DOCKETED OCT 2 5 2000 |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Edward F. Altman has filed a three-count first amended complaint against the defendant, the City of Chicago ("City"). The complaint seeks to hold the City liable under 42 U.S.C. § 1983, alleging that the City denied Altman procedural and substantive due process and violated his equal protection rights. Altman has filed the complaint on behalf of himself and a class of similarly situated individuals. The City has filed a motion to dismiss, and this Court hereby grants in part and denies in part the City's motion to dismiss.

### Background

The following facts are taken from Altman's first amended complaint and are presumed to be true for purposes of this motion. The City hired Altman in 1975 as an Emergency Medical Technician for the Chicago Fire Department ("CFD"). In 1986, Altman was promoted to the career service rank of Special Investigator for the CFD's Internal Affairs Division ("IAD"). In 1988, Altman was promoted to the position of Supervising Investigator for IAD. In 1993, Altman took

a leave of absence from his career service position to accept an appointment to the exempt and non-career service position of Director of IAD. As Director of IAD, Altman was in charge of the department which investigated wrongdoing and misconduct by the CFD and its employees. After Altman became the Director of IAD, the position of Supervising Investigator was exempted from career service in 1993.

Altman alleges that on May 9, 1997, Mark Edinburg, Altman's assistant, was shown a videotape documenting a retirement party held in 1990 at a firehouse where the employees were drinking alcohol, exposing themselves, and making racial remarks. Altman claims that Edinburg was promised a copy of the videotape by Ezra McCann, the Fire Captain of Engine Co. 100, but Edinburg never received a copy of the tape. Altman alleges that Edinburg informed him of the content of the tape and told him that more information would be provided in the future.

Altman claims that he informed Chief Connolly, the head of labor relations and discipline for the CFD, about the existence of the videotape. On July 14, 1997, Altman claims that he informed Commissioner Altman, his father, of the tape's existence, and Commissioner Altman met with McCann on July 18, 1997. According to Altman, McCann did not tender the tape to Commissioner Altman at that time. On July 24, 1997, the younger Altman viewed the tape with McCann. Altman claims that he requested that a copy be made, but McCann stated that he would give the tape only to Altman's father, Commissioner Altman. McCann failed to appear at a meeting with Commissioner Altman scheduled for July 29, 1997. According to Altman, he did not have the authority to directly order McCann to turn over the tape.

McCann tendered a copy of the videotape to Channel 2 (WBBM), and Altman was informed of this fact on November 20, 1997. Altman notified Commissioner Altman that Channel 2 had

2

possession of the tape. On November 21, 1997, Commissioner Altman explained the situation to Mayoral aides, who told the Commissioner to get a copy of the tape.

In late November, 1997, the City's Law Department initiated an investigation into the conduct depicted on the videotape, as well as the subsequent actions taken by the IAD. The Law Department ordered Deputy Fire Commissioner Joyce to obtain a copy of the tape from McCann.

On December 3 and 4, 1997, the news media exposed the videotape and its contents, creating a flurry of negative local and national media attention. On December 8, 1997, Commissioner Altman informed Altman that he was being removed from IAD because he had not moved quickly enough in the investigation. Altman was replaced but continued to work in the personnel division of the CFD. On February 10, 1998, Chief Kehoe, the First Deputy Fire Commissioner, presented Altman with written charges which had grown out of the Law Department's investigation starting in November 1997. On February 11, 1998, Glenn Carr, the Commissioner of Personnel, informed Chief Kehoe that he had reviewed the charges against Altman and that the disciplinary process could be initiated. Altman was given the opportunity to respond to the charges, and he did so in writing on February 14, 1998. On February 25, 1998, Chief Kehoe informed Altman that he was going to be discharged from the position of Director of IAD, effective February 27, 1998. Altman submitted his resignation from his position to Deputy Fire Commissioner Joyce on February 27, 1998.

Altman subsequently requested that he be placed on a reinstatement list for his former career service position of Supervising Investigator. The Personnel Rules of the City state that a career service member on leave and employed in an exempt capacity seeking to return to career service grade will be placed on a reinstatement list. Altman contends that the custom and practice of the CFD is to return exempt employees directly to their career service grade or equal level. On

3

March 30, 1998, the Department of Personnel responded to Altman's request and placed him on the reinstatement list. The Department of Personnel advised Altman that Supervising Investigator positions had been exempted from the career service in 1993 and that reinstatement lists are not utilized for non-career service appointments. After twelve months, Altman was removed from the reinstatement list, as per the Personnel Rules. At that time, Altman was considered to be no longer employed by the City and not eligible for reinstatement to any other position.

Altman initiated this action on behalf of himself and an alleged class of employees of the CFD. Altman has filed an amended complaint, and the City has moved to dismiss the amended complaint.

## Discussion

A motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6) tests whether the plaintiff has stated a claim, not whether the plaintiff will prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss, the court must assume all facts in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). The court may dismiss a complaint for failure to state a claim under Rule 12 (b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

I. Municipal Liability

In order to hold a municipality liable under § 1983, a plaintiff must allege the existence of either an express policy or a custom that was the direct cause of the deprivation of a constitutional right. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-91 (1978); Caldwell v.

City of Elwood, 959 F.2d 670, 673 (7th Cir. 1992). An isolated decision by a municipal employee or official constitutes official policy only if that official has "final policymaking authority" for the challenged act under state law. Caldwell, 959 F.2d at 673 (citing City of St. Louis v. Praprotnik, 485 U.S. 112 (1988)).

In this case, Altman alleges that Commissioner Carr, the Department Head of the City's Department of Personnel, denied him due process. Altman alleges that Commissioner Carr is a policy-maker with final policy-making authority. Under Illinois law, Commissioner Carr has authority to issue personnel rules, and he is responsible for general personnel management. Chicago Municipal Code 2-74-050 (1990). The City does not dispute that Commissioner Carr has final policymaking authority over certain personnel matters. Altman further alleges that the City has a "continuing practice" of unconstitutional conduct with regard to its procedural and administrative rules.

For these reasons, we find that Altman has satisfied the policy or custom requirement by alleging that an individual with policymaking authority caused the alleged unconstitutional injury. He further alleges the existence of a custom or practice that was firmly in place and used repeatedly. These allegations are sufficient to hold the City liable under § 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); Powe v. City of Chicago, 664 F.2d 639, 651 (7th Cir. 1981).

II. Due Process

In Counts I and II, Altman asserts several due process claims. In Count I, Altman asserts that he was deprived of a property and liberty interest in his continued employment with the City without procedural due process in violation of the Fifth and Fourteenth Amendments. In Count II, Altman

5

brings a claim for a deprivation of substantive due process based upon his claims of violations of his property and liberty interests.

To state a claim for a deprivation of procedural due process, a plaintiff must establish that he has a constitutionally protected interest and that he was deprived of that interest without adequate due process. See Board of Regents v. Roth, 92 S.Ct. 2701, 2705 (1972). In general, due process requires that, when a state seeks to terminate a protected interest, it must afford the individual notice and an opportunity for a fair hearing before the termination becomes effective. See Id. (citing Bell v. Burson, 402 U.S. 535, 542).

### A. Property Interest

Altman asserts that he has a property interest in his continued employment and as such cannot be deprived of his employment without due process of law. Altman alleges that: 1) he has a property interest in his exempt position as Director of IAD; 2) as an exempt member of the CFD he can be demoted or disciplined only for good cause; 3) upon a showing of cause he has a right to reinstatement to his former career service grade or equal level; and 4) as a career service employee, he has a due process property interest in his job.

Altman alleges that he has a property interest in his exempt position as Director of IAD because the City has a practice and custom of terminating persons from exempt positions only for good cause. He also alleges that he has a property interest in being returned to the career service position that he had previously held or to a position at an equal level because the longstanding custom and practice of the CFD was to return employees removed from exempt positions to their previous career service positions.

In order to have a property interest in his employment, Altman must demonstrate that he had more than just a unilateral expectation or desire for the position, but rather a "legitimate claim of entitlement to it." Id. Property interests do not derive from the Constitution, but rather from an independent source such as state law. Id. The Personnel Rules governing the employment actions of the City of Chicago represent a possible source of Altman's alleged property interest. However, it is undisputed that the position of Director of IAD is an exempt position and that the Personnel Rules clearly state that exempt employees are terminable at-will. Generally, an at-will employee does not have a constitutionally protected property right in his continued employment. See Harris v. City of Auburn, 27 F. 3d 1284, 1286 (7th Cir. 1994); Campbell v. City of Champaign, 940 F.2d 1111, 1123 (7th Cir. 1991).

Moreover, the City's Personnel Rule XI, Section 1(b) states in part:

> An employee seeking return from a leave for appointment or election to another City office or position will be reinstated to a position in the same class as the position formerly held, if such position exists, is vacant and the department head wishes to fill it .... If no vacancy exists as described, the employee's name shall be placed on the appropriate Reinstatement list.

Thus, the Personnel Rules, alone, do not give Altman any claim of entitlement in either his exempt position or in reinstatement to his previous career service position.

However, a property right in employment can also arise from an unwritten common law established through rules or mutually explicit understandings. Lawshe v. Simpson, 16 F.3d 1475, 1480 (7th Cir. 1994) (citing Perry v. Sindermann, 408 U.S. 593, 602 (1972)). In this case, Altman contends that the CFD's custom and practice of terminating exempt employees only for good cause and returning them to their former career service grade created a property interest in his job.

7

In support of his position, Altman offers a list of CFD employees who allegedly have been returned to their career service positions without being placed on a reinstatement list. Altman claims that exempt members have been returned to career service positions other than those previously held. Based on this course of conduct, Altman claims he had a legitimate expectation of continued employment as career service grade or equal level.

We find that Altman's allegations and supporting evidence raise a genuine issue as to whether the City customarily demotes exempt members only for good cause and places them back to their career service grade or equal level. Long standing customs, not authorized by written law or express municipal policy, can become so permanent and well settled as to constitute a custom or usage with the force of law. City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). Although we are dubious as to the ultimate success of Altman's claims, he has alleged enough at this stage of the litigation to survive a motion to dismiss. Therefore, we find that Altman has adequately alleged a property interest in his continued employment.

### B. Liberty Interest

In addition to claiming a deprivation of a property interest, Altman also claims that the City deprived him of a liberty interest. To state a claim for a deprivation of a liberty interest, a plaintiff must show that: 1) he was stigmatized by the defendant's conduct; 2) the stigmatizing information was publicly disclosed; and 3) he suffered tangible loss of other employment opportunities as a result of the public disclosure. Harris, 27 F.3d at 1286. Altman contends that during the investigation that eventually led to his discharge, the City made remarks to the press that implied that Altman, himself, was involved in a "cover-up."

We find that Altman's allegations are sufficient to state a cause of action. The Mayor and at least one member of the City Council are cited by Altman as making statements in reference to Altman being part of a "cover-up" regarding the tape. Altman further alleges that he was a public employee who was publicly discharged under a shroud of dishonesty which adversely affected his ability to seek employment. Altman has also alleged that the circumstances and public nature of his discharge adversely affected his ability to seek future employment. For pleading purposes, this is enough to state a cause of action.

### C. Sufficiency of Procedure

Once a plaintiff has shown a valid property or liberty interest, due process of law fundamentally requires a fair proceeding. Boddie v. Connecticut, 401 U.S. 371, 375. Due process requires that a hearing "must be a real one, not a sham or a pretense." Joint Anti-Facist Refugee Committee v. McGrath, 431 U.S. 123.

In this case, Altman alleges that the City misused its disciplinary procedures and personnel rules in a single-minded effort to discharge him for his role in the tape scandal. He claims that the City allowed adverse publicity to influence the procedures employed by the City against him. Altman also contends that, because a memorandum from Glenn Carr, the Commissioner of Personnel, to Chief Kehoe was written prior to Altman's rebuttal statement, the decision to discharge Altman necessarily was made prematurely. Altman claims that the hearings and disciplinary procedures were a sham and that the City had no intention of allowing him to keep his position.

We find that, when viewed in the light most favorable to Altman, he has adequately plead sufficient facts to show that his due process rights could have been violated. Therefore, the motion to dismiss is denied.

9

III. Substantive Due Process

Altman next alleges that the City violated his substantive due process rights by terminating his employment in an arbitrary and capricious manner. The Seventh Circuit has ruled that "a plaintiff who challenges the substance of a government decision on substantive due process grounds . . . must show (1) that the decision was arbitrary and irrational, and (2) that the decision-makers either committed another substantive constitutional violation or that state remedies are inadequate." Strasburger v. Board of Educ., 143 F.3d 351 (7th Cir. 1998).

The Seventh Circuit has also ruled that not only must the government's actions be arbitrary and irrational, they must also shock the conscience. Schacht v. Wisconsin Dept. of Corrections, 175 F.3d 497, 502 (7th Cir. 1999) (citing Dunn v. Fairfield Community High School Dist. No. 225, 158 F.3d 962, 965 (7th Cir. 1998)). Conduct which involves abusing executive power, or employing it as an instrument of oppression meets this test. Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992).

Altman's substantive due process claim survives the motion to dismiss because Altman alleges that the City's decision to discharge him was arbitrary and irrational, and that the City's actions could shock the conscience. Altman contends that the investigation conducted by the City was arbitrary and irrational because it was influenced by politics and prejudice. He also claims that the City desired to use him as a scapegoat and that the City was not truly interested in the facts surrounding his actions.

Altman alleges that the City began a sham investigation to trump up false charges regarding a cover-up. Altman alleges that the sham investigation was undertaken not to discover facts but to support a decision already made–to discharge and place blame upon Altman, to scapegoat him.

10

Altman alleges that this constitutes an abuse of executive power. Altman further alleges that his liberty interest was similarly intentionally and maliciously injured by City officials who knowingly made false statements publicly disseminated with reference to Altman covering up the tape.

Accepting Altman's allegations as true, the City's "sham" investigation and questionable motives could rise to the level necessary to shock the conscience. When viewed in the light most favorable to Altman, the facts that he alleges show that the City's decision to discharge him could be an unreasonable abuse of power. Thus, in Count II, Altman alleges sufficient facts to support a substantive due process claim of both his liberty and property rights, and the motion to dismiss is denied.

### IV. Equal Protection

To state a claim for denial of equal protection, a plaintiff must demonstrate that he was: 1) treated differently than similarly situated individuals; and 2) that such selective treatment was based on impermissible considerations such as race, religion, malicious intent to injure, or intent to inhibit or punish the exercise of constitutional rights. Yerardi's Moody Street Restaurant & Lounge, Inc., 932 F.2d 89, 92 (1st Cir. 1991).

#### A. Different Treatment

Altman alleges that he was treated differently than other similarly situated employees who had knowledge of the videotape. Altman claims that he was disciplined while others with knowledge of the tape were not. Altman claims that Chief Connolly, the head of discipline and labor relations for the CFD, was aware of the tape but did not properly investigate. Altman also refers to Ezra McCann, the individual in possession of the tape, and even Fire Commissioner Altman, as

11

being similarly situated to him with knowledge of the tape. He claims that Commissioner Altman and Chief Connolly also have a duty to investigate misconduct within the department.

A violation of equal protection "occurs when the government treats someone differently than another who is similarly situated." Koelsch v. Town of Amesbury, 851 F. Supp. 497, 501 (D. Mass. 1994). Altman has met this requirement by pleading that the investigation targeting him and discipline imposed upon him "was not imposed . . .upon other similarly situated employees of the City of Chicago, Fire Department such as James Connolly, head of discipline and labor for the Fire Department, Chief Jerrold Anderson, Captain Ezra McCann and the Fire Commissioner himself."

B. Impermissible Treatment

In order to state a cause of action for violation of equal protection rights, a plaintiff also must allege that defendants treated him differently because of either his membership in a suspect class, his exercise of a "fundamental right," or because they were motivated by "bad faith or malicious intent to injure." Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen of the Town of Randolph, 932 F.2d 89, 94 (1st Cir. 1991).

In this case, Altman has properly alleged discrimination on the basis of malicious intent to injure. Altman alleges that the facts and circumstances surrounding his discharge are not reasonably related to a legitimate governmental interest. Altman alleges that the decision to discharge him was an arbitrary and non-legitimate use of governmental power.

For these reasons, we find that Altman has adequately alleged a cause of action for a violation of his equal protection rights. The motion to dismiss this claim is denied.

12

V. <u>Class Action Allegations</u>

In his first amended complaint, Altman asserts that he is bringing this action on behalf of himself and:

> all permanent Career Service employees of the City of Chicago Fire Department, who are acting in an exempt capacity for the City of Chicago and who are exposed to discipline under the Chicago Municipal Code, the Chicago Personnel Rules and practices of the Chicago Fire Department.

In this case, Altman cannot meet the requisite standards for bringing this matter as a class action. Fed.R.Civ.P. 23(a). Under Rule 23, a class action may be brought only if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Altman asserts that he was the only person who was subjected to this alleged treatment. Thus, according to Altman himself, there is no class. Altman has presented no evidence to satisfy the numerosity and commonality requirements of Rule 23. Therefore, the class action allegations of the first amended complaint are dismissed.

## Conclusion

For all of the above-mentioned reasons, the Defendant City of Chicago's Motion to Dismiss is hereby granted in part and denied in part. The class action allegations contained in the first amended complaint are dismissed. The motion is denied in all other respects.

*(signature)*
Wayne R. Andersen
United States District Judge

Dated: *October 24, 2000*